No. 81,008

In the Matter of the Estate of JOHN N. ANTONOPOULOS, SR., DECEASED. BARBARA J. ANTONOPOULOS, *Appellant/Cross-appellee*, v. JOHN N. ANTONOPOULOS, JR., *Appellee/Cross-appellant*.

(993 P.2d 637)

 Opinion filed November 12, 1999. 

*John H. Fields*, of Kansas City, argued the cause, and *David W. Carson*, of Kansas City, was with him on the briefs for appellant/cross-appellee.

*Barbara M. Weians*, of Kansas City, argued the cause and was on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

LOCKETT, J.: Decedent's surviving spouse appeals the district court's ruling that certain property and funds held at the time of the decedent's death in joint tenancy by the decedent and decedent's son by a prior marriage are not included in the augmented estate from which the decedent's spouse could take an elective share. Decedent's son cross appeals the district court's increase of the surviving spouse's elective share by finding that the decedent and surviving spouse entered into a common-law marriage prior to their wedding ceremony.

Decedent, John N. Antonopoulos, Sr. (Nick), died intestate on October 4, 1997. He was survived by five adult children and his third wife, Barbara J. Antonopoulos (Barbara). Prior to Nick's death, he had filed for a divorce. After Nick's death, Barbara was appointed administratrix of the estate and granted letters of administration.

On October 30, 1997, Barbara filed an election to take an elective share of the estate. A copy of the election was mailed to John N. Antonopoulos, Jr. (John), Nick's son by a previous marriage, as a person whose interests might be adversely affected by the election.

A dispute arose as to the length of Nick and Barbara's marriage and whether certain properties which had been transferred by Nick to himself and John in joint tenancy prior to the marriage were part of the augmented estate from which Barbara could fulfill her elective share. On March 24, 1998, the district judge found that a common-law marriage predated the couple's July 1992 marriage ceremony. That finding extended the length of the marriage to 10 years and established Barbara's elective share of the augmented estate at 30 percent. The court also found that at Nick's death, the

property held in joint tenancy by Nick and John passed by law to John and was not included as part of the augmented estate. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

## Application of Elective Share Statutes to Intestate Estates

Interpretation of a statute is a question of law, and this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). An appellate court is not bound by the district court's interpretation of a statute. *Cure v. Board of Hodgeman County Comm'rs*, 263 Kan. 779, 782, 952 P.2d 920 (1998).

John questions for the first time on appeal whether the elective-share provisions under K.S.A. 59-6a201 *et seq.*, apply to intestate estates. As a general rule, issues raised for the first time on appeal will not be reviewed. *In re Conservatorship of Marcotte*, 243 Kan. 190, 196, 756 P.2d 1091 (1988). Under the law of intestate succession, the surviving spouse is entitled to one-half of the decedent's property, including one-half of all real estate which the decedent was seized or possessed at any time during the marriage where the surviving spouse did not consent in writing to the disposition of the property. K.S.A. 59-504; K.S.A. 1998 Supp. 59-505. However, it is clear that we could not apply the elective-share statutes if they are not applicable to intestate estates. Therefore, we will first determine whether the elective-share statutes apply to intestate estates.

Where a statute's construction is uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994) (quoting *Brown v. Keill*, 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 [1978]). In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent,

harmonious, and sensible. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997).

Through 1994, a surviving spouse's elective share rights were governed by K.S.A. 1993 Supp. 59-603 of the article entitled "Wills." K.S.A. 1993 Supp. 59-603 provided for the right of the surviving spouse to elect against the decedent's will:

"(a) The surviving spouse, who shall not have consented in the lifetime of the decedent to the testator's will and any and all other dispositions subject to a surviving spouse's right of election as provided by law, may make an election whether such surviving spouse will take under the will and such other dispositions subject to a surviving spouse's right of election or take what such surviving spouse would be entitled to by the laws of intestate succession were such surviving spouse the surviving spouse of a decedent who leaves a spouse and child; but such surviving spouse shall not be entitled to both. If the survivor consents to the will and all other dispositions subject to a surviving spouse's right of election or fails to make an election, as provided by law, the survivor shall take under the testator's will and all other dispositions subject to a surviving spouse's right of election. The will or other dispositions shall be effective except as to the elected share."

In 1994, the Kansas Legislature amended the Probate Code to incorporate a comprehensive elective-share provision patterned after the Uniform Probate Code (UPC). See K.S.A. 59-6a201 *et seq.*; Uniform Probate Code § 2-201 *et seq.*, 8 U.L.A. 101 (1998); Minutes of the House Committee on Judiciary, February 7, 1994, Testimony regarding elective share reform, Attachments 1-4. Unlike the prior elective-share statute, the new elective-share provisions do not specifically limit their application to testate estates. K.S.A. 59-6a202(a)(1) provides that "[t]he surviving spouse of a decedent who dies a resident of this state has a right of election, under the limitations and conditions stated in this act, to take an elective-share amount equal to the value of the elective-share percentage of the augmented estate." Because there is no expression in the Probate Code regarding the application of the elective share statutes to intestate estates, the underlying public policy advanced by the legislature in implementing the elective-share statutes must be examined.

The new elective-share provisions were intended to correct the inequities that resulted under prior law. The elective-share law is based on two theories of the marriage relationship: the "partner-

ship theory" and the "support theory." The partnership theory of marriage recognizes that both partners have contributed to the accumulated estate. See O'Sullivan and Bowen, *New Spousal Elective-Share Rights: Leveling the Playing Field*, 65 J.K.B.A. 18 (Feb./Mar. 1996); Uniform Probate Code Rev. Art. II, General Comment, 8 U.L.A. 93, 99 (1998). Under the partnership theory of marriage, the economic rights of each spouse are derived from an unspoken marital bargain under which the partners agree that each partner is to enjoy a half interest in the fruits of the marriage. A decedent who disinherits his or her surviving spouse (partner) is seen as having reneged on the bargain. The elective share grants the surviving spouse an entitlement to compensation for nonmonetary contributions to the marital estate. Uniform Probate Code Rev. Art. II, General Comment, 8 U.L.A. 93 (1998).

The elective-share provisions implement the marital-partnership theory by means of a mechanically determined approximation system. Under this system, there is no need to identify which of the couple's property was earned during the marriage and which was acquired prior to the marriage or acquired during the marriage by gift or inheritance. Uniform Probate Code Rev. Art. II, General Comment, 8 U.L.A. 96 (1998). A sliding scale adjusts for an assumed corresponding greater contribution to the acquisition of the couple's marital property based on the length of marriage. See K.S.A. 59-6a202(a). The elective-share percentage determined by the sliding scale is applied to the value of the "augmented estate." The augmented estate equals the value of the couple's combined assets, not merely the value of the assets nominally titled in the decedent's name. See K.S.A. 59-6a203.

The support theory recognizes that during their joint lives, spouses owe each other mutual duties of support, and these duties continue in some form after death in favor of the survivor, as a claim on the decedent spouse's estate. O'Sullivan and Bowen, *New Spousal Elective-Share Rights: Leveling the Playing Field*, 65 J.K.B.A. 18, 19 (Feb./Mar. 1996). The elective share implements the support theory by granting the survivor spouse a supplemental elective-share amount related to the survivor's actual needs. In implementing the support rationale, the length of the marriage is

irrelevant because the duty of support is premised on status, and the duty arises at the inception of the marriage. Uniform Probate Code Rev. Art. II, General Comment, 8 U.L.A. 99 (1998).

K.S.A. 59-6a202(b) implements the support rationale by providing a minimum elective-share amount of $50,000 regardless of the length of marriage. The surviving spouse's own title-based ownership interests count first toward making up this supplemental amount, including assets shifting to the survivor at the decedent's death and assets passing to the survivor from the decedent's testate or intestate estate. K.S.A. 59-6a202(b); 59-6a206; 1998 Supp. 59-6a207; 59-6a209(a)(1). If the surviving spouse's assets are less than $50,000, the survivor is entitled to whatever additional portion of the decedent's estate is necessary to bring the survivor's assets up to that amount, pursuant to K.S.A. 59-6a209(b) and (c), including the decedent's nonprobate transfers to others. K.S.A. 59-6a202(b).

The public purpose of elective-share statutes is to prevent disinheritance of the surviving spouse. See generally Volkmer, *Surviving Spouse's Right to Inherit*, 21 Est. Plan. 58 (1994). While it is well recognized that without an elective-share option, a testator could disinherit a surviving spouse, it is equally obvious that contrived nonprobate transactions can disinherit the surviving spouse of an intestate decedent. To hold that the intestate share provided under K.S.A. 59-504 and K.S.A. 1998 Supp. 59-505 precludes a surviving spouse from taking an elective share would defeat the intent of the Kansas Legislature to protect against disinheritance. See *Mongold v. Mayle*, 192 W. Va. 353, 357, 452 S.E.2d 444 (1994) (citing public policy reasons for holding that elective share pertains to intestate estates).

Additional support for holding that the elective-share article applies to intestate estates is found in K.S.A. 59-6a209, K.S.A. 1998 Supp. 59-2233, and K.S.A. 1998 Supp. 59-505. K.S.A. 59-6a209 provides, in part:

"(a) In a proceeding for an elective share, the following are applied first to satisfy the elective-share amount and to reduce or eliminate any contributions due from the decedent's probate estate and recipients of the decedent's nonprobate transfers to others:

"(1) Amounts included in the augmented estate under K.S.A. 59-6a204 which pass or have passed to the surviving spouse by testate *or intestate* succession and amounts included in the augmented estate under K.S.A. 59-6a206." (Emphasis added.)

K.S.A. 59-6a209 expressly anticipates application of the elective share to an intestate estate. Therefore, Barbara, as the surviving spouse of an intestate decedent, is not precluded from exercising elective-share rights under K.S.A. 59-6a201 *et seq*.

## Joint Tenancy Property

The district court excluded from the augmented estate the three parcels of real estate held by Nick in joint ownership with John. Barbara contends that the property held by Nick in joint tenancy with John is part of the augmented estate from which she can satisfy her elective share.

The question presented involves interpretation of a statute. The standard of review regarding the interpretation of statutes has been stated. In question are: (1) whether property held by the decedent spouse in joint tenancy is included in the augmented estate; (2) whether an appellate court can value the augmented estate where the district court has failed to do so; (3) whether the homestead and the homestead property are included in valuing the augmented estate; (4) whether railroad retirement pensions are included in the augmented estate; and (5) whether the decedent's joint checking account is included in the augmented estate.

At the time of Nick's death three parcels of real estate were held in joint tenancy by Nick and his son, John. One of these parcels was on North 67th Street, Kansas City, Kansas, and included ten acres containing peach trees, some buildings, and a house where Nick and his first wife raised their family. John presently lives in the house with his family. Nick transferred this property to John in joint tenancy on June 4, 1985. The 1996 appraised value of the property for tax purposes was $87,200. A second parcel of property, on North 67th Street, Kansas City, Kansas, consisting of five acres of orchard, was also transferred by Nick to John in joint tenancy on June 4, 1985. The 1996 appraisal of this property for tax purposes was $1,600. Both properties were previously owned by Nick's

first wife's parents and were purchased by Nick and his first wife prior to the birth of John.

The third property, located on Donohoo Road, was purchased by Nick and John in 1983. Because of a pending lawsuit, the deed was not delivered until 1985. A deed was transferred to Nick and John as tenants in common by the Wichita Federal Land Bank on March 25, 1985. Nick and John transferred this property to each other as joint tenants the same day. The parcel was appraised for tax purposes in 1996 at $7,000. Barbara acknowledged that Nick and John purchased some land together, but she was not aware as to how the property was titled. A large part of the land is an orchard.

Another piece of real estate, located on Donohoo Road, Kansas City, Kansas, was purchased by Nick and his second wife, Beverly. This property was awarded to Nick in his divorce from Beverly. Nick transferred this parcel to Barbara and himself in joint tenancy on April 27, 1994.

At oral argument in this case, counsel for John presented an argument not made to the court below or in the appeal briefs. John argued that his rights as joint tenant vested prior to the effective date of the elective share provisions, and, therefore, those rights cannot be impaired by the Act.

John relies on K.S.A. 59-6a216 for support. K.S.A. 59-6a216 provides, in part: "[A]ny irrevocably accrued right acquired [ ] before the effective date of this act is not impaired by this act."

The question turns on whether the right of survivorship in a joint tenancy is an "irrevocably accrued right." This court has previously held that a joint tenant may at his or her pleasure dispose of his or her share and convey it to a stranger and that such conveyance will result in a severance or termination of the joint tenancy. Furthermore, a joint tenancy may be severed, either voluntarily, as by a partition of the property, or a conveyance of the interest of any joint tenant, or involuntarily, as by an execution sale of any interest that is subject to it. *Berry v. Berry*, 168 Kan. 253, 256, 212 P.2d 283 (1949).

Although John's ownership rights in the property vested at the deed of conveyance, his right of survivorship to the whole property

was not an "irrevocably accrued right" until Nick's death. Therefore, the subsequent act of the legislature in creating the spouse's elective share right did not divest John of an irrevocably accrued right. John's argument fails.

The first step in a proceeding for an elective share is to determine the amount of the augmented estate. The value of the augmented estate includes the values of the decedent's net probate estate, the decedent's nonprobate transfers to others, the decedent's nonprobate transfers to the surviving spouse, and the surviving spouse's own property and nonprobate transfers to others. K.S.A. 59-6a203. Decedent's nonprobate transfers to others include:

"(a) Property owned or owned in substance by the decedent immediately before death that passed outside probate at the decedent's death. Property included under this category consists of:

. . . .

"(2) The decedent's fractional interest in property held by the decedent in joint tenancy with the right of survivorship. The amount included is the value of the decedent's fractional interest, to the extent that such fractional interest passed by right of survivorship at the decedent's death to the surviving joint tenant other than the decedent's surviving spouse." K.S.A. 1998 Supp. 59-6a205.

The properties which were held in joint tenancy with John as the surviving tenant are nonprobate transfers to others and, under K.S.A. 1998 Supp. 59-6a205, the value of Nick's fractional share of those properties is included in the augmented estate.

Second, the elective share of the surviving spouse is determined by a sliding scale based on the length of the marriage. K.S.A. 59-6a202. To satisfy the elective share, the following assets are applied first to satisfy the surviving spouse's share: (1) amounts which pass or have passed to the surviving spouse by testate or intestate succession and by nonprobate transfers, (2) amounts which would have passed to the spouse but were disclaimed by the spouse and pass to her children, (3) the surviving spouse's own property and nonprobate transfers to others, and (4) one-half of the value of any real estate of which the decedent possessed and disposed of at any time during the marriage. K.S.A. 59-6a209(a).

If, after the application of subsection (a) of K.S.A. 59-6a209, the elective-share amount is not fully satisfied, the amounts included in the decedent's probate estate and the value of certain of the decedent's nonprobate transfers to others are applied to satisfy the balance of the elective share. K.S.A. 59-6a209(b). Those amounts include property such is at issue in this case, the value of the decedent's fractional interest in property held in joint tenancy with the right of survivorship. K.S.A. 1998 Supp. 59-6a205(a)(2). Therefore, the value of Nick's interest in the property held in joint tenancy with John must be applied to the elective share if the share amount was not satisfied by application of the amounts provided in K.S.A. 59-6a209(a).

The district court failed to consider subsection (b) of K.S.A. 59-6a209 when it found that joint tenancy property was not included in property available to the spouse to take by election. Therefore, the district court's finding that Nick's fractional interest in property held in joint tenancy with John was not subject to Barbara's election was erroneous.

## Value of Augmented Estate

Because the district court erroneously concluded that the property held in joint tenancy with John was not in the augmented estate available to satisfy the spousal elective share, it did not compute the amount of Barbara's elective share. Barbara requests in the interest of judicial economy that this court compute her elective share. We note that there are disputed facts as to the value of the properties to be included. For instance, Barbara asserts that Nick's fractional interest in the properties held in joint tenancy by Nick and John should be valued at 100 percent. She supports this fractional value by pointing out that "fractional interest" is defined in K.S.A. 1998 Supp. 59-6a201(b) as "the numerator of which is one and the denominator of which, if the decedent was a joint tenant, is one plus the number of joint tenants who survive the decedent . . . *unless there is proof of some other proportional ownership, legal or equitable.*" (Emphasis added.) Barbara contends that because there was evidence that John did not contribute to the purchase price of some of the property, the conveyance of

that property was created for convenience only and not a true joint tenancy.

We note that the properties were placed in joint tenancy with John prior to the marriage of Nick and Barbara. There was evidence that John contributed the bulk of the work and ongoing financial investment (equipment, trees, etc.) that went into maintaining the property, which was a peach orchard. In addition, John and his family reside in one of the disputed properties. An appellate court cannot resolve the factual questions involved in determining if Nick's fractional interest in the properties was greater than, less than, or equal to 50 percent.

## Decedent and Surviving Spouse's Residence

Barbara asserts that a portion of the residence is excluded from the augmented estate, and that she takes the property as a homestead in addition to her elective share of the augmented estate.

K.S.A. 1998 Supp. 59-6a204 provides that the value of the augmented estate includes the value of the decedent's probate estate, reduced by funeral and administrative expenses, homestead or homestead allowance, family allowances and enforceable demands. K.S.A. 59-401 defines homestead as 160 acres of land lying without, or one acre lying within, the limits of an incorporated city occupied by the decedent and family and continued to be occupied by the surviving spouse. K.S.A. 1998 Supp. 59-6a215 provides that the homestead or homestead allowance is in addition to any share passing to the surviving spouse by way of elective share.

John argues that the residence of Nick and Barbara, which passed to Barbara by law as the surviving party in a joint tenancy, is included in the augmented estate and the entire value of the residence counts toward Barbara's elective share. John cites O'Sullivan and Bowen, *New Spousal Elective-Share Rights: Leveling the Playing Field*, 65 J.B.A.K. 18, 24 (Feb./Mar. 1996), and an example included in the Kansas Bar Association Estate Administrative Handbook, Chapter 2A, § 2.20 (1997 Supp.) for support.

The O'Sullivan and Bowen article provides an example of elective-share rights where, according to the authors, the homestead was included in the augmented estate because the homestead

passed to the surviving spouse automatically as surviving joint tenant. The Kansas Bar Association Estate Administration Handbook (KBA Handbook) likewise provides an example where, because the homestead passed to the surviving spouse as joint tenant, the homestead was included in the augmented estate. The KBA handbook relied on by John includes the decedent and surviving spouse's residence in the augmented estate under K.S.A. 1998 Supp. 59-6a207(a)(1)(A) and K.S.A. 59-6a206(a). We disagree with these conclusions.

General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, Syl. ¶ 9, 955 P.2d 1136 (1998).

K.S.A. 1998 59-6a207(a)(1)(A) provides that the augmented estate includes the value of the *surviving spouse's* fractional interest in property held in joint tenancy with the right of survivorship. K.S.A 59-6a206(a) provides that the *decedent's* fractional interest in property held as a joint tenant with the right of the survivorship which passes to the surviving spouse as surviving joint tenant is included in the augmented estate. These values are applied to the surviving spouse's elective share and reduce the amount of the elective share payable from third parties. See K.S.A. 59-6A209(a)(1) and (a)(3).

In its position paper on elective share reform presented to the Kansas legislature in contemplation of the new elective-share provisions, the KBA stated: "Homestead and allowances are excluded [from the augmented estate] because, as under the current Kansas system, the spouse is entitled to homestead and allowances in addition to the elective share." Minutes of the House Committee on Judiciary, February 7, 1994, Elective Share Reform, A Position Paper from the Kansas Bar Association, Attachment 1, p. 7. The legislature codified the homestead entitlement in K.S.A. 1998 Supp. 59-6A204 and K.S.A. 1998 Supp. 59-6a207(a)(1)(C), specifically excluding the homestead from the augmented estate.

This court has observed that public policy preserves the homestead right for the benefit of the surviving spouse and any minor children—to the end that they may not suffer from poverty, or burden the public with their support. *Burns v. Spiker*, 109 Kan. 22, 30, 202 Pac. 370 (1921). Statutory interpretation and public policy supports Barbara's contention that the homestead is excluded from the augmented estate. Once the homestead has been set aside as property not included in the augmented estate, the more general statutes, K.S.A. 1998 Supp. 59-6a207(a)(1)(A) and K.S.A. 59-6a206(a), are applied, and *non-homestead* property held by the decedent and the surviving spouse in joint tenancy is included in the augmented estate.

If the joint-tenancy property held by Nick and Barbara qualifies for a homestead election, the homestead interest is excluded from the augmented estate.

## Homestead Amount

John argues that even if this court determines that the homestead is excluded from the augmented estate, the entire value of the property should not be excluded because the acreage of the property exceeds the amount designated in the Kansas statutes as that amount qualifying as homestead. Barbara excludes from the augmented estate what she determines as the value of a life estate in the property and includes in the augmented estate the value of the fractional interest held by Nick at his death and the fractional interest she owns. She cites K.S.A. 1998 Supp. 59-6a204, K.S.A. 59-6a206(a) and K.S.A. 1998 Supp. 59-6a207(a)(1)(A) as authority for this treatment.

Kansas law defines the homestead as 160 acres of land lying without, or one acre lying within, the limits of an incorporated city. K.S.A. 1998 Supp. 59-6a201(k) provides that where the surviving spouse exercises the right to the homestead, the homestead shall be valued as a life estate interest in the equity of the real estate comprising the homestead in the manner provided by the federal estate tax code. See K.S.A. 59-401. The value of the homestead has not been determined by the district court. Therefore, we remand to determine the value of the homestead and exclude that value

from the augmented estate. Barbara's fractional interest of the remaining value of the property, if any, should be included in the augmented estate under K.S.A. 1998 Supp. 59-6a207(a)(1)(A) and Nick's fractional interest in the property passing to Barbara as surviving tenant should be included under K.S.A. 59-6a206(a).

## Railroad Retirement Pension

John and Barbara dispute also whether any part of future railroad retirement benefits payable to Barbara should be included in the augmented estate. K.S.A. 59-6a206 is the authority for concluding that a portion of the railroad benefits may be included in the augmented estate. That statute provides that with the exception of amounts passing to the surviving spouse under the federal social security system, the value of the decedent's nonprobate transfers to the decedent's surviving spouse are included in the augmented estate.

Barbara contends that her survivor's railroad benefits are similar in nature to federal social security benefits; therefore, the railroad benefits should be excluded from the augmented estate. John contends that Barbara's entire benefit should be included in the augmented estate. However, John argues that if this court should exclude the railroad retirement benefits as analogous to social security benefits, it should exclude only Tier I benefits and include Tier II benefits.

In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979), the United States Supreme Court considered whether a railroad retirement pension was devisable under community property law. The Court held that the pension was not an asset subject to the community property law. 439 U.S. at 590. In the opinion, the Court analyzed the components of a railroad retirement pension:

"In its modern form, the [Railroad Retirement] Act resembles both a private pension program and a social welfare plan. It provides two tiers of benefits. The upper tier, like a private pension, is tied to earnings and career service. . . .

"The lower, and larger, tier of benefits corresponds exactly to those an employee would expect to receive were he covered by the Social Security Act. 45 U.S.C. § 231b(a)(1)." 439 U.S. at 574-75.

Because the Tier I benefits correspond to social security benefits, to the extent Barbara's railroad retirement survivor benefit consists of Tier I benefits, the benefits should be excluded from the augmented estate. To the extent the retirement benefits consist of Tier II benefits, the benefits should be included under K.S.A. 59-6a208(b)(2) as the commuted value of an amount payable under a public or private pension, a death benefit, or a retirement plan.

## Joint Checking Account

Finally, Barbara raises the issue of including the value of Nick's checking account in the augmented estate. Barbara suggests that the district court's failure to include the checking account was an oversight. At the hearing, John did not contest the inclusion of the checking account balance in the augmented estate, and he does not brief the issue on appeal. Barbara's brief indicates that Nick's ownership interest in the account was $1,600. John's pleading of written defenses to Barbara's petition filed in the district court states that he withdrew the balance of the checking account, $1,600 and that he did so as surviving joint tenant.

K.S.A. 1998 Supp. 59-6a205(a)(3) provides that the decedent's ownership interest in property or accounts passing to another upon the decedent's death is included in the augmented estate. Therefore, on remand the district court must determine Nick's ownership interest in the joint checking account and include that amount in the augmented estate.

## Cross Appeal

On cross-appeal, John challenges the district court's conclusion of law that Nick and Barbara were married at common law in 1987. The additional years of marriage increase Barbara's elective share from 15 percent to 30 percent.

The essential elements of a common-law marriage are: (1) capacity of the parties to marry; (2) a present marriage agreement between the parties; and (3) a holding out of each other as husband and wife to the public. Although the marriage agreement need not be in any particular form, it is essential there be a present mutual consent to the marriage between the parties. The burden of prov-

ing a common-law or consensual marriage rests upon the party asserting it. *Driscoll v. Driscoll*, 220 Kan. 225, 227, 552 P.2d 629 (1976). If the district court's findings are supported by substantial competent evidence and the court properly applied the rules in the aforementioned case, this court will affirm the district court. See *In re Estate of Mazlo*, 211 Kan. 217, 218, 505 P.2d 762 (1973). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

Nick and Barbara began living together in 1987. Shortly after moving in together, Nick gave Barbara rings in a private ceremony witnessed by Barbara's two young daughters. Barbara continued using her maiden name. Nick and Barbara were formally married on July 27, 1992, and Barbara began using Nick's last name. Barbara claimed that she and Nick had a common-law marriage from the date of the private ceremony in 1987.

There was evidence offered at the hearing from which the district court could have concluded that Barbara and Nick did not have a common-law marriage. However, the district court found that a common-law marriage existed from 1987. In reviewing the decision of a trial court, this court must accept as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court, and must disregard any conflicting evidence or other inferences that might be drawn therefrom. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. K.S.A. 1998 Supp. 60-252(a); *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377-78, 855 P.2d 929 (1993).

The evidence meets the substantial competent evidence standard of review for affirming findings of fact and conclusions of law.

Reversed and remanded for further proceedings.

ALLEGRUCCI, J., dissents to the holding that Barbara and Nick had a common-law marriage.