The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 15, 2018

**2018COA161**

**No. 17CA1065, In re Estate of Cloos — Probate — Elective-Share of Surviving Spouse — Supplemental Elective Share**

A division of the court of appeals considers whether the
statutory "supplemental elective-share" applies to the distribution
of a probate estate to a disinherited surviving spouse with assets
exceeding $50,000.  *See* § 15-11-202(2), C.R.S. 2018.  The division
concludes that the district court erred in allocating $50,000 to the
disinherited spouse under section 15-11-202(2) when the record
showed he held assets worth substantially more than $50,000 and
had received assets worth over $100,000 from the nonprobate
estate.

Court of Appeals No. 17CA1065
Larimer County District Court No. 15PR30
Honorable Devin R. Odell, Judge

In re the Estate of Irene Mae Cloos, deceased.

Jean Ann Cloos,

Appellant,

v.

Drexel H. Cloos; and Joseph D. Findley, as Personal Representative of the
Estate of Irene Mae Cloos,

Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE RICHMAN
Berger and Kapelke*, JJ., concur

Announced November 15, 2018

Jean Ann Cloos, Pro Se

Rosenberg, Smith & Zipser, PLLC, Amy K. Rosenberg, Fort Collins, Colorado,
for Appellee Drexel H. Cloos

Kaufman & Findley, PC, Joseph D. Findley, Loveland, Colorado, for Appellee
Joseph D. Findley

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Jean Ann Cloos appeals the final settlement of the estate of her mother, Irene Mae Cloos.  She contends that the district court erred by allocating $50,000 in "elective-share" funds from the probate estate to the decedent's husband of sixty-three years and Jean Ann's father, Drexel H. Cloos (husband), and by permitting conflicts of interest.  We reverse the order as to the award of $50,000 as an elective share and remand for further proceedings.

## I. Background

¶ 2    The decedent died testate, devising her entire estate to Jean Ann.[1]  Although the accounting of the estate is not fully developed in the record, it appears that the decedent owned the following property on the date of her death:

- one-half of a house in Fort Collins appraised at $325,000 — husband owned the other half, and Jean Ann and husband both resided there;

- a public employee retirement account of unknown value;

- an undetermined amount of personal property; and

---

[1] We refer to the appellant as Jean Ann, rather than Ms. Cloos, to avoid confusion with the decedent.

- a shared cabin in Wyoming with an assessed value of about $277,000, to which husband held survivorship rights.

¶ 3     The decedent's will nominated Jean Ann as the personal representative (PR) for the estate, and she was appointed approximately four months after the decedent's death.  Jean Ann was represented by counsel for some periods during probate but often represented herself.

¶ 4     Husband was represented by counsel.  Because the will devised the entire estate to Jean Ann, husband made statutory claims for shares of the estate.  He claimed a $32,000 family allowance (FA) and a $32,000 exempt property allowance (EPA).[2]  *See* §§ 15-11-403, -404, C.R.S. 2018.  He also petitioned for a supplemental elective share of the marital property[3] pursuant to sections 15-11-201 to -211, C.R.S. 2018.

---

[2] Husband also filed a couple of small claims irrelevant to this appeal, each for less than $1000.

[3] The term "marital property," in this context, is different from marital property in a divorce proceeding.  Here, the term includes property from the entire augmented estate, which includes property acquired before marriage.  *Compare In re Marriage of Seewald*, 22 P.3d 580, 586 (Colo. App. 2001) (In dividing marital property for divorce, property is considered marital if "acquired during the

¶ 5     After several months without a response to his claims, husband petitioned the district court to remove Jean Ann and appoint a successor PR.  After a hearing, the court ordered her removal, finding that it was in the best interest of the estate to proceed "without the burden of mutual rancor and distrust evident at the hearing."  The court appointed Joseph D. Findley as the successor PR.

¶ 6     Findley appraised the value of the Fort Collins home at $325,000.  He moved for an order to approve selling the half owned by the estate to husband.  Husband's payment for the purchase price of $162,500 was to be paid with (1) a credit of $64,000 from probate estate funds for his FA and EPA claims; (2) a credit of $50,000 from probate estate funds for his "statutory minimum elective-share"; and (3) $48,500 cash.  The district court approved the sale.  As of the final accounting — the only accounting in the record — $48,500 was the only asset in the estate.  The court granted a final settlement of the estate.

marriage and subject to distribution."), *with* § 15-11-203, C.R.S. 2018 (defining property constituting an augmented estate to include the surviving spouse's property and delineating percentages for "the martial-property portion of the augmented estate" depending on the length of the marriage).

¶ 7    Jean Ann appeals, pro se.  Because she is representing herself, we liberally construe her appeal to raise two contentions of error.  First, she contends that the court erroneously credited husband with an additional $50,000 in elective-share funds to which he was not entitled.  And second, she contends that the district court erred by permitting the successor PR and husband's attorney to appear in the case despite conflicts of interest.  We agree with the first contention, and we do not address the second because it was not preserved.

## II. Husband's Elective Share

¶ 8    Jean Ann filed an objection to husband's petition for an elective share and his FA and EPA claims.  She calculated his elective share of fifty percent of the known augmented estate and argued that the elective share had been fully satisfied by the marital assets he maintained and received through a nonprobate transfer (the Wyoming cabin).  *See* §§ 15-11-202 to -208, C.R.S. 2018.  She further argued that the FA and EPA claims had been fully satisfied.

¶ 9    Husband responded that (1) he was entitled to a minimum elective share of $50,000; and (2) the FA and EPA claims "are not charged against but are in addition to the elective-share and

4

supplemental elective-share amounts." § 15-11-202(3), C.R.S. 2018. On the second point, he asked for a determination as a matter of law.

¶ 10   Jean Ann replied, as relevant here, that "[t]he minimum elective-share is not applicable in this case because . . . [husband] has received far more than $50,000."

¶ 11   The district court issued an order determining that husband's rights to a FA and EPA were "in addition to, and apart from his right to a spousal elective-share." That order is not on appeal, and the court did not address in that order whether a supplemental minimum elective share is applicable to the Cloos estate.

¶ 12   Yet, as noted, the district court approved the sale of the estate's half of the Fort Collins house to husband for $48,500, after crediting him with $50,000 toward the house for his "minimum elective-share," effectively agreeing that husband was entitled to a "supplemental elective-share" of $50,000 in addition to his other surviving spouse claims.

## A. Preservation

¶ 13   Husband asserts that Jean Ann failed to preserve this issue because she did not object to the order of final settlement or the

order approving the sale of the Fort Collins house. We disagree. Jean Ann raised and gave the district court the chance to rule on the application of the supplemental elective share as noted above. Moreover, during discussion of the house sale, and while appearing before the court pro se, Jean Ann argued that husband's cash price was originally $99,000 but had been "switched" to $48,000.[4]

### B. Standard of Review and Applicable Law

¶ 14    We review de novo questions of law concerning the construction and application of the Colorado Probate Code. *Beren v. Beren*, 2015 CO 29, ¶ 11. "Our primary duty in construing statutes is to give effect to the intent of the General Assembly, looking first to the statute's plain language." *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004).

¶ 15    The Colorado statutes governing the elective share of a surviving spouse are modeled after part 2 of the Uniform Probate Code (Unif. Law Comm'n 2010) (UPC). *See In re Estate of Gadash*, 2017 COA 54, ¶ 21. Two theories of inheritance for a surviving

---

[4] We realize that the exact numbers should be $98,500 and $48,500 and assume that Jean Ann's pro se argument included a rounding error.

spouse inform the UPC: the partnership theory and the support theory. *See* UPC art. II, pt. 2 gen. cmt.

¶ 16    First, the partnership theory of marriage "recognizes that both partners have contributed to the accumulated estate." *In re Estate of Antonopoulos*, 993 P.2d 637, 642 (Kan. 1999) (also applying the UPC).

> The general effect of implementing the partnership theory in elective-share law is to increase the entitlement of a surviving spouse in a long-term marriage in cases in which the marital assets were disproportionately titled in the decedent's name; and to decrease or even eliminate the entitlement of a surviving spouse in a long-term marriage in cases in which the marital assets were more or less equally titled or disproportionately titled in the surviving spouse's name.

UPC art. II, pt. 2 gen. cmt.  Applying this theory, a surviving spouse, regardless of the contents of a decedent spouse's will, may elect to take a statutory share of the combined marital assets, also known as the "augmented estate." § 15-11-202(1).  The augmented estate is the sum of the value of all property from (1) the decedent's net probate estate; (2) the decedent's nonprobate transfers to others; (3) the decedent's nonprobate transfers to the surviving spouse; and (4) the surviving spouse's property and nonprobate

transfers to others. § 15-11-203, C.R.S. 2018. If married to the decedent for ten years or more, a surviving spouse may claim an elective share of fifty percent of the augmented estate (a standard elective share). *Id.*

¶ 17 Second, the support theory of marriage "recognizes that during their joint lives, spouses owe each other mutual duties of support, and these duties continue in some form after death in favor of the survivor, as a claim on the decedent spouse's estate." *Antonopoulos*, 993 P.2d at 642. Applying this theory, "[i]f the survivor's assets are less than the [$50,000] minimum, then the survivor is entitled to whatever additional portion of the decedent's estate is necessary, up to 100 percent of it, to bring the survivor's assets up to that minimum level." UPC art. II, pt. 2 gen. cmt.

¶ 18 Section 15-11-202(2)(a) implements the support rationale by providing for a *supplemental* elective share if the surviving spouse's assets are less than $50,000. As relevant here, the statute provides as follows:

> *If the sum* of the [values of the surviving spouse's property, decedent's nonprobate transfers to the surviving spouse], and that part of the elective-share amount payable from the decedent's net probate estate . . . *is less*

8

> *than fifty thousand dollars, the surviving*
> *spouse is entitled to a supplemental elective-*
> *share* amount equal to fifty thousand dollars,
> minus the sum of [those] amounts
> described . . . .

*Id.* (emphasis added).

## C. Analysis

¶ 19     A standard elective share is based on the value of the augmented estate — the combined marital assets — not the value of assets transferred to a surviving spouse upon a decedent's death. One purpose for computing the elective share from the augmented estate is "to prevent the surviving spouse from electing to a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets, and other nonprobate arrangements." *In re Estate of Fries*, 782 N.W.2d 596, 601 (Neb. 2010).

¶ 20     The UPC and the plain language of section 15-11-202(2)(a) implement that purpose by providing a supplement to the standard elective share *only* in cases where the surviving spouse's share of the augmented estate is so small that the surviving spouse would be left with less than $50,000 of assets after the estate distribution.

In other words, a surviving spouse married for ten years or more is statutorily entitled to an elective share of marital assets equal to (1) fifty percent of the augmented estate (standard elective share) or (2) $50,000 (supplemental elective share), *whichever is greater.* In satisfying the $50,000 amount, the surviving spouse's own title-based ownership interests count first; included in the survivor's assets for this purpose are amounts transferred to the survivor at the decedent's death and amounts owing to the survivor from the decedent's estate under the standard-elective-share formula discussed above. UPC art. II, pt. 2 gen. cmt.

¶ 21    In this case, husband's share of marital assets in real estate interests alone far exceeded $50,000 because he owned half of the Fort Collins house (appraised at $325,000) and all of the Wyoming cabin (assessed at $277,000). Therefore, husband is not entitled to a supplemental elective share of the estate, and it was error to credit him with a supplemental $50,000 of probate estate funds toward his purchase of the Fort Collins house. Accordingly, we reverse the order approving the final settlement of the estate and remand the case to the district court to recalculate the amounts

due from husband to the estate for the purchase of the Fort Collins house.

¶ 22    We are unable, however, to ascertain whether husband may be entitled to any probate assets for the standard elective share because the record does not contain a complete accounting of the estate. Specifically, there is no calculation of the augmented estate at the time of the decedent's death. *See Beren*, ¶ 2 (The Colorado Probate Code "fixes the value of the property comprising the augmented estate on the decedent's date of death."). While it appears from the limited information in the record that husband held well over fifty percent of the augmented estate, and was thus not entitled to any further assets from the probate estate, we perceive no evidence that the successor PR calculated either the actual value of the augmented estate or the percentage held by husband. Thus, we cannot be sure that husband was not entitled to any standard-elective-share credit toward the house.

¶ 23    Accordingly, in addition to the directions on remand set forth above, we remand to the district court for a determination of (1) whether husband held less than half of the augmented estate upon the decedent's death, and would thus be entitled to any of the

probate estate as an elective share; (2) what amount, if any, to which he would be entitled; and (3) the resulting amount of funds, if any, husband must repay the estate.

### III. Conflicts of Interest

¶ 24     Acting pro se during probate, Jean Ann appealed a district court order to this court, arguing that (1) the successor PR had a conflict of interest because his firm had represented husband years before and (2) husband's attorney had a conflict of interest because he had participated in the creation of one of the decedent's wills. Before that appeal was dismissed, Jean Ann attempted to raise the issue with the district court.

¶ 25     The district court did not consider the conflicts issue to be properly before it because the issue was on appeal.  Nevertheless, the court asked Jean Ann to file something in writing telling it what she was asking it to do, and why her request would be "appropriate under the law and the facts."  Although this court dismissed Jean Ann's first appeal without prejudice, Jean Ann did not submit anything in writing to the district court regarding the alleged conflicts of interest.

¶ 26    We decline to address this issue because it was not properly preserved for review.  *See O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010).

## IV. Conclusion

¶ 27    We reverse the order of final settlement and remand the case for further proceedings.  The district court may take additional evidence and argument, and it may order further relief and enter a final judgment consistent with this opinion.

JUDGE BERGER and JUDGE KAPELKE concur.