T.C. Summary Opinion 2020-25

UNITED STATES TAX COURT

DAVID CASIMER BRZYSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22530-17S.                    Filed August 27, 2020.

David Casimer Brzyski, pro se.

<u>Joseph P. Benoist</u> and <u>Douglas S. Polsky</u>, for respondent.

SUMMARY OPINION

COPELAND, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule references are to the Tax
(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated July 24, 2017, the Internal Revenue Service (IRS or respondent) determined a $7,816 deficiency in Federal income tax and imposed a $49 section 6662(a) accuracy-related penalty for petitioner David Casimer Brzyski's 2016 tax year.

After concessions,[2] the issues for decision are whether Mr. Brzyski is entitled to (1) dependency exemptions under section 151(a) and (c) with respect to the minor children A.D.B.[3] and J.N.B.; (2) head of household filing status under sections 1(b) and 2(b); (3) the child tax credit (including the refundable portion thereof) under section 24(a) and (d), respectively; and (4) the earned income tax credit under section 32(a).

Background

Some facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. When Mr. Brzyski

[1](...continued)
Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar.

[2]Respondent concedes the accuracy-related penalty.

[3]Minor children are referred to by their initials. See Rule 27(a)(3).

timely filed his petition, he resided in Missouri. Daniela Bourne[4] is the mother of A.D.B. and J.N.B. Mr. Brzyski is not the biological or adoptive father of those children.

In 2011 Mr. Brzyski and Daniela were residents and domiciliaries of California. On November 23, 2011, Mr. Brzyski and Daniela flew from California to Missouri to visit Mr. Brzyski's family for Thanksgiving. Mr. Brzyski's mother lived in Missouri. Over the holiday he and Daniela went to dinner in Kansas by driving across the Missouri border.

After the holiday, both flew back to California on November 30, 2011. In December 2011 Mr. Brzyski referred to Daniela as his fiance in a social media post. In the years following 2011, on his tax returns filed with the IRS Mr. Brzyski selected inconsistent filing statuses for himself. Mr. Brzyski timely filed his 2012 Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, and claimed the standard deduction and exemption amount for a "single" filer. He timely filed his 2013 Form 1040, U.S. Individual Income Tax

---

[4]Documents in the record refer to A.D.B.'s and J.N.B.'s mother as either Daniela Bourne or Daniela Brzyski. For clarity, we will refer to the children's mother as Daniela.

Return, selecting "single" filing status.[5]  He timely filed his 2016 tax return selecting "head of household" filing status; he signed that return on February 22, 2017.[6]  In August 2017 he untimely filed his 2015 tax return reverting to "single" filing status.

I.    Minor Children

In 2016 A.D.B. was age 7 and J.N.B. was age 11.  The children did not reside with Mr. Brzyski for the full 12 months of 2016.  Mr. Brzyski resided and was domiciled in California until March 2016.   He traveled to Missouri in January 2016 to look for work but returned to California in March 2016.  Upon his return, he and Daniela entered into a month-to-month lease in California.  In mid-March, after signing the lease, Mr. Brzyski left California and became a resident and domiciliary of Missouri.  He moved in with his mother at that time and lived with her until October 2016.[7]

---

[5]We do not have any information regarding tax year 2014.

[6]Mr. Brzyski attempted to file an amended return for 2016, signed on June 20, 2017, selecting "married filing jointly" filing status.  That return is stamped "amended return considered in audit" but was not accepted or processed by the IRS.

[7]Mr. Brzyski and Daniela entered into a lease agreement in Missouri in October 2016.  On the lease agreement Daniela is listed as Daniela Brzyski; she signed as Daniela Bourne.

The children were residents of California until the end of the 2015-16 school year. Daniela received governmental assistance and money sent from Mr. Brzyski to help pay for the children's expenses. California school records from that period indicate that the children resided at their grandfather's[8] address for the 2015-16 school year.[9] The children left California and started living in Missouri sometime between June and October 2016. For the 2016-17 school year Missouri school records report that the children resided at Mr. Brzyski's mother's address.

## II. Petitioner's Tax Return and Notice of Deficiency

On his 2016 tax return Mr. Brzyski claimed a dependency exemption for each of the two minor children (A.D.B. and J.N.B.), head of household status, the child tax credit including the refundable portion thereof,[10] and the earned income tax credit. The return reported earned income of $16,788 and claimed a refund of $9,288.

---

[8]The grandfather was Daniela's father.

[9]The children were also claimed as dependents on the grandfather's 2016 return.

[10]As discussed infra p. 15, the refundable portion of the child tax credit is often referred to as the additional child tax credit. See sec. 24(d). This common name appears on the 2016 Form 1040 on line 67 as "additional child tax credit." Mr. Brzyski had claimed this refundable portion of the child tax credit on his 2016 return.

The IRS examined Mr. Brzyski's Form 1040 for the 2016 tax year and determined that the two minor children were not his dependents. The IRS disallowed the two exemptions, head of household status, the child tax credit, and the earned income tax credit. The IRS froze $7,572 of his refund and on July 24, 2017, mailed him a notice of deficiency.

## Discussion

### I.    Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct. Rule 142(a) places the burden of proof on the taxpayer unless otherwise provided by statute or determined by the Court. See Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deduction or credit claimed on a return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

The burden of proof shifts to the Commissioner under certain circumstances to the extent that a taxpayer comes forth with credible evidence with respect to a factual issue relevant to ascertaining the taxpayer's liability. Sec. 7491(a)(1). Mr.

Brzyski does not contend, nor does the evidence establish, that the burden shifts to respondent under section 7491(a) as to any issue of fact.

II.     Dependency Exemption

Section 151(a) and (c) allows taxpayers an exemption for each "dependent" of a taxpayer as defined in section 152.  Section 152(a) sets out a disjunctive definition of a dependent:  The individual must either be a qualifying child as defined under section 152(c) or a qualifying relative as defined under section 152(d)(1).  See Skitzki v. Commissioner, T.C. Memo. 2019-106, at *5; see also Konrad v. Commissioner, T.C. Memo. 2010-179, 2010 WL 3119199, at *1.

A.     Qualifying Child

For a taxpayer to claim an individual as a qualifying child under section 152(c), the individual must satisfy five requirements.  The individual must: (1) bear a specified relationship to the taxpayer; (2) have the same principal place of abode as the taxpayer for more than one-half of the taxable year; (3) be younger than the taxpayer and not have attained the age of 19 by the close of the taxable year (or the age of 24 in the case of a student); (4) have not provided over one-half of his or her own support for the year; and (5) not have filed a joint return with his or her spouse for the taxable year.  Sec. 152(c)(1)-(3); see Skitzki v.

Commissioner, at *6. If the individual fails any of the five requirements, he or she will not be considered a qualifying child of the taxpayer. Sec. 152(c)(1)-(3).

We begin with the specified relationship requirement. Section 152(c)(2) provides that an individual meets the relationship requirement "if such individual is--(A) a child of the taxpayer or a descendant of such a child, or (B) a brother, sister, stepbrother, or stepsister of the taxpayer or a descendant of any such relative." A stepchild is included in the term "child". Sec. 152(f)(1)(A)(i).

Mr. Brzyski admits he was not the biological or adoptive father of the children he claimed. Therefore, the aforementioned requirement is satisfied only if the children were his stepchildren in 2016. Accordingly, the key to whether A.D.B and J.N.B. meet the relationship requirement, as defined by section 152, is whether Mr. Brzyski was married to Daniela in 2016. We find he was not.

Mr. Brzyski contends that he and Daniela entered into a common law marriage in 2011 when they visited Kansas for dinner.[11] State law determines the marital status of taxpayers for purposes of the Federal tax laws. Von Tersch v. Commissioner, 47 T.C. 415, 419 (1967). Mr. Brzyski was a resident and domiciliary of California between 2011 and March 2016; he was a resident and

_____

[11]Mr. Brzyski claims that over the Thanksgiving holiday he and Daniela established a common law marriage by driving across the Missouri border to Kansas and declaring their marriage over dinner.

domiciliary of Missouri thereafter. Neither California nor Missouri allows for common law marriage; therefore, Mr. Brzyski had to form the common law marriage in Kansas. See Cal. Fam. Code sec. 300 (West 2020); Mo. Rev. Stat. sec. 451.040 (2020); see also Etienne v. DKM Enters., Inc., 186 Cal. Rptr. 321, 322 (Cal. Ct. App. 1982); Doyle v. Doyle, 497 S.W.2d 846, 847 (Mo. Ct. App. 1973). The three factors that constitute a common law marriage in Kansas are: (1) the two individuals must have the requisite capacity to marry, (2) the individuals must have a present marriage agreement between themselves, and (3) the individuals must hold themselves out to the public as husband and wife. Fleming v. Fleming, 559 P.2d 329, 330-331 (Kan. 1977). In determining the existence of a common law marriage, Kansas law requires that Mr. Brzyski, through "substantial" evidence, prove that he and Daniela entered into a common law marriage. In re Estate of Antonopoulos, 993 P.2d 637, 647-648 (Kan. 1999). Kansas law further defines substantial evidence as that "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." Id. at 648.

We find that Mr. Brzyski did not meet his burden of proof to establish a common law marriage with Daniela in Kansas. Mr. Brzyski did not provide any documentary or other credible support that he or Daniela went to Kansas for the

purpose of marriage, or more importantly, that they entered into a common law marriage there.[12]  At trial, Mr. Brzyski could not remember the date of his proffered common law marriage and provided the Court with inconsistent documentary support of the date on which he believed he was married.[13]  In one affidavit provided at trial Mr. Brzyski and Daniela assert they were married in Kansas a few days after they flew back to California on November 30, 2011.  This would be factually impossible.  The discrepancies between his trial testimony and the documents provided to this Court were not adequately explained by Mr. Brzyski.  Therefore, Mr. Brzyski did not prove he visited Kansas to marry, let alone that he had a common law marriage under the laws of that State.

Furthermore, Mr. Brzyski contradicted himself in his portrayal of his relationship with Daniela.  In December 2011, after the date of the alleged marriage, Mr. Brzyski referred to Daniela as his fiance on his social media post.

---

[12]On the day of trial Mr. Brzyski provided affidavits from his family members, Daniela, and himself.  These were the only documents that showed the date in which Mr. Brzyski visited Kansas, and they were uncorroborated.  Fed. R. Evid. 802 generally provides that hearsay is inadmissible; however, Fed. R. Evid. 803(3) provides that hearsay may be admitted into evidence to show state of mind.  The affidavits were admitted solely to evaluate Mr. Brzyski's state of mind as to the purported marriage.

[13]More specifically, he signed two separate affidavits that were presented to the Court.  These two affidavits both bear the signature date of April 28, 2017; however, each shows a different date for the alleged engagement and marriage.

Although he insists he was married, Mr. Brzyski continued to file using "single" status for the tax years following the date of the alleged marriage. Then, for the 2016 taxable year, Mr. Brzyski filed selecting "head of household" status, which, as explained infra pp. 14-15, would have meant he was separated from Daniela. It was not until 2017, when he attempted to file an amended 2016 return, that he selected married filing joint status. Later that same year, he filed his 2015 return selecting single filing status. Therefore, even if Mr. Brzyski and Daniela went to Kansas in 2011, his contradictory portrayal of his marital status hardly satisfies the three factors that constitute a common law marriage in Kansas. See supra p. 9.

In sum, Mr. Bryzski has not offered any consistent supporting documentation that he went to Kansas to marry or that he and Daniela held themselves out to be husband and wife following their 2011 Thanksgiving trip. Accordingly, we find that Mr. Brzyski failed to meet his burden of proof to establish that a common law marriage took place in Kansas.

Since Mr. Brzyski was neither the biological father, adoptive father, nor stepfather of the minor children, they did not have any of the required relationships to him listed under section 152(c)(2). Therefore, he did not satisfy the relationship requirement and neither A.D.B nor J.N.B. was his qualifying child for the dependency exemptions reported on the 2016 tax return.

B.     Qualifying Relative

Even though Mr. Brzyski did not prove he had qualifying children, that is

not determinative of whether he is entitled to dependency exemptions.  See

sec. 152(a).  If he instead had a qualifying relative, the claimed deductions may

still be appropriate.  Accordingly, we proceed to determine whether the children

were considered "qualifying relatives" with respect to Mr. Brzyski.  Section

152(d)(1) provides the requirements for an individual to be a qualifying relative.

To be a qualifying relative to a taxpayer, an individual must:  (1) bear a

relationship as defined in section 152(d)(2); (2) receive more than half of the

individual's support for the taxable year from the taxpayer; (3) have less gross

income than the section 151(d) exemption amount ($4,050 for 2016); and (4) not

be a qualifying child of any other taxpayer.  See sec. 152(d)(1).  Although the two

children are not related to Mr. Brzyski through any of the first seven of the eight

delineated section 152(d)(2)[14] relationship categories that can make someone a

---

[14]The first seven categories of familial relationships listed under sec.
152(d)(2) are:

> (A) A child or a descendant of a child.
>
> (B) A brother, sister, stepbrother, or stepsister.
>
> (C) The father or mother, or an ancestor of either.

(continued...)

taxpayer's qualifying relative, the eighth category (under section 152(d)(2)(H)) includes an individual who shares a principal place of residence with the taxpayer and is a member of the taxpayer's household. The regulations and our caselaw make clear that this means the individual must reside with the taxpayer for the entire[15] taxable year. Mr. Brzyski admitted that the children did not live with him for all of 2016. Mr. Brzyski only briefly lived in California in 2016, and the children did not reside in Missouri until after the end of the 2015-16 school year. Mr. Brzyski did not provide any records, logs, or receipts showing that the

---

[14](...continued)

      (D) A stepfather or stepmother.

      (E) A son or daughter of a brother or sister of the taxpayer.

      (F) A brother or sister of the father or mother of the taxpayer.

      (G) A son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law.

[15]Sec. 1.152-1(b), Income Tax Regs., clarifies that to qualify as a relative of the taxpayer for sec. 152(d)(2)(H) purposes, the individual must reside with the taxpayer during the taxpayer's entire taxable year. Sec. 1.152-1(b), Income Tax Regs., interprets sec. 152(a)(9) (2000). Sec. 152(a)(9) (2000) is identical to current sec. 152(d)(2)(H). The regulation has not been amended to reflect the changes that were enacted by the Working Families Tax Relief Act of 2004, Pub. L. No. 108-311, sec. 201, 118 Stat. at 1169. However, the Court continues to rely on the regulation to the extent that it is not inconsistent with sec. 152. See, e.g., Golit v. Commissioner, T.C. Memo. 2013-191, at *9 n.4.

children resided with him for all of 2016. It is unclear from the record when the children started residing with Mr. Brzyski before October 2016. Consequently, we find that the residence requirement has not been satisfied. Therefore the relationship requirement of section 152(d)(2)(H) has not been satisfied.

We could end our inquiry there; however, we note that Mr. Brzyski also failed to establish that he meets the financial support test under section 152(d)(1)(C), as he admitted that he did not provide this Court with any documentation showing that he provided support for the minor children. He testified that he sent money to Daniela in 2016 but did not provide any corroborating documentation. The Court does not accept Mr. Brzyski's unsubstantiated self-serving testimony in lieu of documentary evidence. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (concluding that the Court is not required to accept uncorroborated or self-serving testimony as reliable and true). Because Mr. Brzyski could not substantiate his financial support of the children, we find that he does not meet the financial support requirement. Consequently, we find that A.D.B. and J.N.B. are not qualifying relatives of Mr. Brzyski.

III.   Head of Household Filing Status

Among other things, for a taxpayer to claim "head of household" filing status he or she must be unmarried[16] and have a dependent under section 151 or a qualifying child under section 152(c).  Sec. 2(b)(1).  As discussed supra pp. 7-14, Mr. Brzyski does not qualify for any dependency exemption under section 151; nor can he claim the children as qualified children under section 152(c) for 2016.  Therefore, Mr. Brzyski is not entitled to the filing status "head of household" for the 2016 taxable year.  Moreover, that claim undercuts his prior assertion that he was living with Daniela in a common law marriage in 2016.

IV.   Child Tax Credit and Additional Child Tax Credit

The child tax credit provides credit to taxpayers if they have a qualifying child as defined in section 152(c) that has not attained the age of 17 during the taxable year.  Sec. 24(a), (c).  A portion of that credit--commonly referred to as the additional child tax credit--is refundable.  Sec. 24(d).  For reasons outlined above,

_____

[16]The first eligibility requirement for head of household status is that the taxpayer not be married or a surviving spouse.  Sec. 2(b)(1).  Exceptions include situations where the spouses are separated under a decree of divorce or separation, where one of the spouses is a nonresident alien, or where the spouses live apart for at least the last six months of the year.  See secs. 2(b)(2), (c), 7703(b).

the two minor children are not qualifying children to Mr. Brzyski. See supra pp. 7-11. Therefore, Mr. Brzyski is not entitled to either the child tax credit or the additional child tax credit.

V.    Earned Income Tax Credit

Section 32(a)(1) allows a refundable credit towards the taxpayer's tax liability for a taxpayer who has "earned income" for the taxable year. The credit is subject to a phaseout as described in section 32(a)(2). A taxpayer who has surpassed the phaseout amount is no longer entitled to the credit. The allowable earned income in determining the earned income credit increases substantially for taxpayers with qualifying children. Sec. 32(c)(1)(A). The definition of "qualifying child" for the purposes of section 32 is the same requirement as provided in section 152(c). Sec. 32(c)(3)(A). As discussed supra pp. 7-11, Mr. Brzyski had no qualifying children under section 152(c) for the 2016 tax year.

Taxpayers without qualifying children are still eligible for the earned income tax credit if their earned income[17] does not exceed $14,880.[18] See Rev.

---

[17]Earned income is determined by the greater of adjusted gross income or earned income. Mr. Brzyski's earned income was greater than his adjusted gross income. See Rev. Proc. 2015-53, sec. 3.06, 2015-44 I.R.B. 615, 619.

[18]The revenue procedure lists the "completed phaseout amount" for adjusted gross income (or, if greater, earned income) at or above which no credit is

(continued...)

Proc. 2015-53, sec. 3.06, 2015-44 I.R.B. 615, 619.  Mr. Brzyski earned $16,788 in the 2016 taxable year.  This amount is above the cap, and therefore, he is not entitled to the credit.

VI.  Conclusion

We conclude that Mr. Brzyski is not entitled to his claimed dependency exemption, head of household filing status, child tax credit (including the refundable additional child tax credit portion thereof), or earned income tax credit.  Therefore, we hold for respondent on all points not conceded.  In reaching our decision, we have considered all arguments made, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a).

_____

[18](...continued)
allowed.  Rev. Proc. 2016-53, sec. 3.06.  For 2016, the completed phaseout amount for single filers is listed as $14,880.  Id.